**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| DAVID E. REED, | CASE NO. 3:15-cv-00620 |
| Petitioner, | JUDGE JAMES G. CARR |
| v. | MAGISTRATE JUDGE VECCHIARELLI |
| CHARLOTTE JENKINS, Warden | |
| Respondent. | **REPORT AND RECOMMENDATION** |

This 28 U.S.C. § 2254 petition is before the magistrate judge pursuant to Local Rule 72.2(b)(2).  Before the court is the petition of David E. Reed ("Reed" or "Petitioner"), for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  (Doc. No. 1.)  Petitioner is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case of *State of Ohio vs. Reed*, Wyandot County Case No. 13-CR-0002.  For the following reasons, the magistrate judge recommends that the petition be DENIED.

## I.  Background

In January 2013, the State issued a three count indictment charging Petitioner with two counts of rape of a child under thirteen years of age in violation of Ohio Revised Code ("O.R.C.") § 2907.02(A)(1)(b) and one count of gross sexual imposition of a child under thirteen years of age in violation of O.R.C. § 2907.05(A)(4).  (Doc. No. 7-1, Exh. 1.)

The state appellate court that affirmed Petitioner's conviction noted the following

relevant facts:

[*P4]  The first witness to testify for the State was M.R.  He testified that he is currently 15 years old and his birthday is in August, 1998.  M.R. stated that Reed is his grandfather on his father's side.  He also stated that he lived in Reed's basement from 2005 to 2008 or 2009 in Wyandot County with his father and his mother.

[*P5]  M.R. stated that sometimes he would sleep in Reed's bed with him.

M.R. then stated:

A:    Well, [Reed] pulled down my pants and — well, PJs, of course.  And he got something from his, like suitcase or something, and, well, he stuck it up my butt.  And, well, he told me that if I told anybody — before that, he said that it was God's fault.  He did it to me because I was a bad child.  And he said if I told anybody, that I would be in severe trouble.

Q:    Do you remember how old you were when this happened [M.R.]?

A:    Well, not a specific time. It was when I was about ten. But before that, it would be from seven to ten.

Trial Tr., p. 93-94.  M.R. described the object that was inserted inside of him as being made of metal, silver and shiny, and the size of a pencil. *Id.* at 95.  The suitcase that the object was kept in was described as being black with gold locks on it and "something that a lawyer would have."  *Id.* M.R. then made an in-court identification of Reed.

[*P6]  On cross-examination, M.R. was asked why he waited four years to tell anyone about what had happened, and M.R. replied that Reed had begun doing the same thing to his younger brother.

* * *

[*P7]  Reed then asked "[i]sn't it true that it's not Mr. Reed who actually did this to you, it was Mark Reed, your father?" Id. at p. 101. M.R. replied that both his father and Reed would insert objects inside of him. Id.

* * *

[*P11]  J.P. was the next witness for the State. He testified that his birthday is November 19, 1998. J.P. stated that he knew Reed from Boy

2

Scouts and that Reed was his Scout leader.

[*P12]  J.P. stated that in the Summer of 2011, when [he] was twelve years old, he and Reed went to Scout Village, located in Wyandot County, to paint a shed.  Once they were done painting, J.P. went swimming in the pond.  After J.P. was done swimming, he took his boxers off so they would dry. Reed then told J.P. he needed to check him for leeches and began touching and rubbing J.P. When asked where Reed touched and rubbed J.P., he replied "down by my balls." *Id*. at p. 130.  J.P. testified that Reed did not look for leeches anywhere else on his body.  The touching and rubbing lasted for about five minutes.  Reed stopped touching and rubbing J.P. once other campers pulled into Scout Village.

[*P13]  J.P. testified the next day after the pond incident Reed hurt him again.  J.P. went over to Reed's house to mow his yard. After mowing Reed's yard for about an hour and a half, J.P. went inside Reed's house to get a drink of water. J.P. then testified that Reed held him down and "touch[ed] me down by my butt and rubb[ed] his penis all over me." Id. at p. 139. J.P. stated:

A:   He rubbed it on me. Then he stuck something in me.

Q:   He stuck something in you?

A:   Yes.

Q:   Okay. Where did he stick it in you?

A:   My butt.

Q:   Okay. Do you know what it was that he stuck in your butt?

A:   No.

Q:   Do you know what it felt like?

A:   It was smooth.

Q:   It was smooth. Okay.  Do you know if it was his penis that he stuck in your butt?

A:   It wasn't.

Q:   It wasn't?

3

A:      No.  It was something that looked like a fake penis.

Q:      Something that looked like a fake penis. Do you remember how big it was?

A:      No.

Q:      Do you remember what color it was?

A:      It was white.

Q:      It was white.  What else happened?

A:      He was masturbating.

* * *

Q:      Okay.  How long did this happen, [J.P.]?

A:      A good fifteen minutes.

* * *

Q:      This went on for about fifteen minutes. Do you remember what happened after that?

A:      Yeah.

Q:      What happened?

A:      He ejaculated and he came on my butt.

Q:      Did he ever stick his penis in you, [J.P.]?

A:      No.

*Id*. at p. 140-42.

[*P14]  After this incident occurred, Reed took J.P. outside and hit him with a stick and said "if I told anybody, he was going to hurt me more than he already did."  *Id*. at p. 143.  J.P. stated that these two incidents happened in September of 2011.  J.P. stated that he quit the Boy Scouts after he went to a Boy Scout camp and got tied to a tree by another Boy Scout.  J.P. stated that this happened after Reed touched him.  J.P. was never asked to make an in court identification of Reed.

4

* * *

[*P19]  Reed testified that in 2009, he lived in Sycamore, Ohio with his wife, son, daughter-in-law, and their children, M.R., A.R., and V.R. Reed denied ever being alone with M.R. in his house. Reed replied that "[t]here was always somebody around[.]"  *Id*. at p. 163.  Reed stated that M.R. never slept in his bedroom.  Reed did admit to owning a briefcase with gold locks on it.  He stated that he used an attaché case and kept his "Boy Scout stuff in it."  *Id*. at p. 164.  Reed stated that he carried it to all his Boy Scout meetings.  He denied ever touching M.R. inappropriately or touching M.R. with any inappropriate objects.

*State v. Reed*, 2014 Ohio App. LEXIS 634, 2014-Ohio-644, P29 (Ohio Ct. App. Feb. 24, 2014).

## II.   Procedural History

### A.   Trial Court Proceedings

On August 21, 2013, a jury convicted Petitioner of two counts of rape and one count of gross sexual imposition.  (Doc. No. 7-1, Exhs. 4 & 5.)  On September 23, 2013, the state trial court sentenced Petitioner to an indefinite prison term of a minimum of ten years to a maximum of life for the two rape convictions and a terms of five years for the gross sexual imposition conviction.  (Doc. No. 7-1, Exh. 7.)  The sentences were ordered to be served consecutively totaling 25 years to life.  (*Id*.)

### B.   Direct Appeal

On September 30, 2013, Reed, through counsel, filed a Notice of Appeal with the Third District Court of Appeals ("state appellate court"). (Doc. No. 7-1, Exh. 10.) Reed, through new counsel, raised the following assignments of error:

> 1.    The trial court erred as a matter of law in denying appellant's motions for acquittal at the end of the State's evidence, as the evidence presented was insufficient for a conviction.

5

    2.      The jury verdict of guilty was against the manifest weight of the evidence.

    3.      Appellant was denied his right to a fair trial by the ineffective assistance of counsel.

(Doc. No. 7-1, Exhibit 11.)  On February 24, 2014, the state appellate court affirmed the trial court's judgment.  (Doc. No. 7-1, Exhs. 13 & 14.)

On April 7, 2014, Reed, *pro se*, filed a notice of appeal with the Ohio Supreme Court.  (Doc. No. 7-1, Exh. 15.)  In his memorandum in support of jurisdiction, Reed set forth the following propositions of law:

    I.      The Ohio State Courts erred and abused their discretion by permitting the Appellant's Judgment of conviction on all three counts; as convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.

    II.     The Ohio State Courts erred as a matter of law and denied Appellant a fair trial and due process of law by allowing the ineffective assistance of counsel to be ignored at both the trial and appellate levels.

    III.    The Ohio State Courts erred and abused their discretion by imposing, or affirming; consecutive sentences without the required findings pursuant to ORC Section 2929.14(C) (4) and inconsistent with the constitutional principles of *Oregon v. Ice*, 555 U.S. 160, 129 S. Ct. 711 (2009); rendering a first time offender's sentence excessive, void and inconsistent with Ohio's felony sentencing statutes.

(Doc. No. 7-1, Exh. 16.)  On June 11, 2014, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S. Ct. Prac.R. 7.08(B)(4).  (Doc. No. 7-1, Exh. 18.)

### III.  Proceedings in this Court

On March 30, 2015, Petitioner, *pro se*, filed his § 2254 petition.  (Doc. No. 1.)  He asserted the following grounds for relief:

6

**GROUND ONE**: The Ohio State Courts erred and abused their discretion by allowing and affirming Petitioner's Judgment of conviction on all three counts; as convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.

**GROUND TWO**: The Ohio State Courts erred as a matter of law and denied Petitioner a fair trial and fair proceedings as well as Due Process by allowing him to be prejudiced by ineffective assistance of counsel at both trial and appellate levels.

**GROUND THREE**: The Ohio State Courts erred and abused their discretion by imposing and affirming consecutive sentences without the required findings pursuant to ORC Section 2929.14(C)(4) and inconsistent with the Federal constitutional principles of *Oregon v. Ice*, 555 U.S.160 (2009); rendering a First Time Offender's sentence excessive and void as a matter of law.

(Doc. No. 1.)

## IV. Procedural Issues

### A.    Jurisdiction

A state prisoner may file a § 2254 petition in "the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him."  28 U.S.C. § 2241(d).  The Court of Common Pleas of Cuyahoga County, Ohio sentenced Petitioner.  (Doc. No. 9-1, Exh. 15.)  Cuyahoga County is within this Court's geographic jurisdiction.  *See* 28 U.S.C. § 115(a).  Accordingly, this Court has jurisdiction over Petitioner's § 2254 petition.

### B.    Exhaustion and Procedural Default

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus.  *See* 28 U.S.C. § 2254(b) and (c); *Castille v. Peoples*, 489 U.S. 346, 349

7

(1989); *Riggins v. McMackin*, 935 F.2d 790, 793 (6th Cir. 1991). If any state procedures for relief remain available, the petitioner has not exhausted his state remedies, and a federal court must dismiss his petition. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims. *See Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990). Fair presentment of a claim in a federal constitutional context requires a petitioner to apprise the state courts that his claim is a federal claim, rather than "merely . . . an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).

Similarly, a federal court may not review "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). When a petitioner "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

If the State argues that a petitioner has procedurally defaulted, the Court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

8

> First, the court must determine that there is a state
> procedural rule that is applicable to the petitioner's claim and
> that the petitioner failed to comply with the rule. . . . Second,
> the court must decide whether the state courts actually
> enforced the state procedural sanction.  . . . Third, the court
> must decide whether the state procedural forfeiture is an
> "adequate and independent" state ground on which the state
> can rely to foreclose review of a federal constitutional claim.
> . . . This question generally will involve an examination of the
> legitimate state interests behind the procedural rule in light
> of the federal interest in considering federal claims. . . .
> [Fourth, if] the court determines that a state procedural rule
> was not complied with and that the rule was an adequate
> and independent state ground, then the petitioner must
> demonstrate . . . that there was "cause" for him to not follow
> the procedural rule and that he was actually prejudiced by
> the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

The Respondent asserts that Reed's ineffective assistance of appellate counsel claim is procedurally defaulted because it was not fairly presented to the Ohio courts. (Doc. No. 7 at pp. 38-39.)  Specifically, Respondent asserts that Reed raised an ineffective assistance of appellate counsel claim, for the first time, on direct appeal to the Ohio Supreme Court rather than through an Ohio App. R. 26(B) application to reopen his appeal.  (*Id*.)  Respondent also contends that ground three, Petitioner's challenge to the imposition of consecutive challenges, is similarly defaulted as it too was raised for the first time before the Supreme Court of Ohio on direct appeal and never presented to the state appellate court.  (Doc. No. 7 a pp, 40-41.)

Respondent cites no authority to support her position that an ineffective assistance of counsel claim cannot be raised, for the first time, on direct appeal and is waived if not raised first in an Ohio App. R. 26(B) application.  Rather, the cases cited by Respondent stand for the general proposition that the Ohio Supreme Court will not

9

consider an issue not raised below.  This, however, is problematic when the alleged

error is ineffective assistance of *appellate* counsel.  There is some Sixth Circuit

authority supporting the opposite conclusion:

> Despite the fact that Thompson's ineffective-assistance-of-appellate-counsel claim was raised only before the Ohio Supreme Court, the Warden acknowledges that this claim is not defaulted.  An Ohio procedural rule allows parties to raise ineffective-assistance-of-appellate-counsel claims for the first time via a motion for leave to appeal to the Ohio Supreme Court, and thus a claim raised in that manner may be "fairly presented" for federal habeas purposes.  *See Holloman v. Timmerman-Cooper*, No. 2:08-CV-441, 2009 WL 4283099, at *8 (S.D. Ohio Nov. 30, 2009) (holding that an ineffective-assistance-of-appellate-counsel claim raised on direct appeal to the Ohio Supreme Court was not procedurally defaulted) (*citing State v. Murnahan*, 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992)).  Furthermore, because Thompson's ineffective-assistance-of-appellate-counsel claim was fairly presented to the Ohio Supreme Court but not addressed by it, we will review the claim *de novo. See Howard v. Bouchard*, 405 F.3d 459, 467 (6th Cir.2005) ("Where the state court has not addressed or resolved claims [that are] based on federal law, most courts, including this one, have held that the decision is not an 'adjudication on the merits.' Thus, a federal habeas court reviews such unaddressed claims *de novo*.").

*Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *see also*

*Perry v. Warden of Mansfield Corr. Inst.*, 2015 WL 2097815, at *19 (N.D. Ohio, May 5,

2015) (White, M.J.) ("A number of United States district court decisions in Ohio have

declined to enforce procedural default where a petitioner did not raise or timely raise an

ineffective assistance of counsel claim in a Rule 26(B) application but nonetheless

raised such claims on direct appeal before the Ohio Supreme Court.") (*citing Small v.*

*Warden*, 2013 WL 3745834 at *3 (S.D.Ohio, Jul.15, 2013) (finding the petitioner already

raised a claim of ineffective assistance of appellate counsel before the Ohio Supreme

Court despite never attempting to file a 26(B) application and "[b]y so doing, he has

10

provided the Ohio courts adequate opportunity to consider the claim"); *Sales v. Wilson*, 2007 WL 4365400 (N.D. Ohio Dec.12, 2007) ("Considering that Sales claimed ineffective assistance of appellate counsel previously before the Ohio Supreme Court ... Sales has exhausted his state remedies with respect to his seventh ground.")) However, in a more recent decision the Sixth Circuit has found that "although a defendant *may* raise the ineffective assistance of counsel issue in both a timely direct appeal and a timely application under Rule 26(B), the Ohio Supreme Court's denial of the discretionary appeal *does not exhaust the issue* because the court of appeals is nevertheless obliged to address the application on the merits." *Goldberg v. Maloney*, 692 F.3d 534, 538 (6th Cir. 2012) (emphasis added).  The *Goldberg* decision explained that "raising a claim for ineffective assistance of appellate counsel in a discretionary appeal to the Ohio Supreme Court, without addressing the claim through Ohio Appellate Rule 26(B), does not satisfy the exhaustion requirement unless the Ohio Supreme Court addresses the issue on the merits."  *Id*.

As Reed's ineffective assistance of appellate counsel claim in ground two can easily be decided on the merits, the Court declines to find whether Reed sufficiently exhausted his ineffective assistance of appellate counsel claim by presenting it only on discretionary review.  *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (courts may skip complicated "procedural-bar issues" if the merits are "easily resolvable against the habeas petitioner").

Turning to Petitioner's third ground for relief, which challenges Petitioner's sentence, Respondent asserts that it, too, is procedurally defaulted.  (Doc. No. 7 at pp.

40-41.)  Respondent  is correct that Petitioner's challenge to his sentence could have been raised immediately before the state appellate court, but Reed failed to do so. "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).  Under Ohio law, a constitutional question cannot ordinarily be raised before the Ohio Supreme Court unless it was first presented to the intermediate appellate court.  *See State v. Jester*, 32 Ohio St.3d 147, 154, 512 N.E.2d 962, 966 (1987).  Moreover, Ohio law prohibits him from raising this issue now.  *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *Collins v. Perini*, 594 F.2d 592 (6th Cir. 1979).

Therefore, the Court agrees that Reed's third ground for relief challenging his sentence is procedurally defaulted.  Reed's Traverse has not presented this Court with any significant argument setting forth cause for his default or identified any ensuing prejudice.  On the other hand, Reed's ineffective assistance of appellate counsel claim in his second ground for relief is based, in part, on counsel's failure to challenge the imposition of consecutive sentences.  (Doc. No. 1 at p. 19.)  As Reed's ineffective assistance claim can easily be decided on the merits, the Court declines to find whether appellate counsel's alleged ineffectiveness may serve as cause to excuse his default and proceeds to the merits below.

## VI.  The Merits of Petitioner's Claims

### A.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ( "AEDPA") altered

12

the standard of review that a federal court must apply when deciding whether to grant a

writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless
> the adjudication of the claim resulted in a decision that was
> contrary to, or involved an unreasonable application of,
> clearly established Federal law, as determined by the
> Supreme Court of the United States; or resulted in a
> decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State
> court proceeding.

A writ of habeas corpus may issue only if the state court's decision is contrary to clearly

established federal law or was based on an unreasonable determination of the facts in

light of the evidence.  *See* *Carey v. Musladin*, 549 U.S. 70 (2006); *Williams v. Taylor*,

529 U.S. 362, 379-90 (2000).  Law is "clearly established" only by holdings of the

Supreme Court, not its dicta, and the law must be clearly established at the time of the

petitioner's conviction.  *See* *Carey*, 549 U.S. at 74.

Courts must give independent meaning to the phrases "contrary to" and

"unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which
> a state prisoner may obtain federal habeas relief with
> respect to a claim adjudicated on the merits in state court.
> Under the statute, a federal court may grant a writ of habeas
> corpus if the relevant state-court decision was either (1)
> "*contrary to* . . . clearly established Federal law, as
> determined by the Supreme Court of the United States," or
> (2) "*involved an unreasonable application of* . . . clearly
> established Federal law, as determined by the Supreme
> Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is

13

"contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.   A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been objectively unreasonable."  *Id.* at 520-21 (internal citations and quotation marks omitted).

**B.     Ground One: Sufficiency of the Evidence and Manifest Weight**

In his first ground for relief, Petitioner argues that his convictions were not supported by sufficient evidence and also that they were against the manifest weight of the evidence.  (Doc. No. 1 at pp. 12-17.)

The Court addresses only the sufficiency argument, as a claim that a conviction is against the manifest weight of the evidence is a state-law argument not cognizable upon habeas review.  *See, e..g, Nash v. Eberlin*, 258 Fed. App'x 761, 765, n. 4 (6th Cir. 2007).  This is because a claim that a conviction is against the manifest weight of the evidence differs materially from a claim that a conviction was based on insufficient evidence:

> With respect to sufficiency of the evidence, "'sufficiency' is a term of art meaning that legal standard which is applied to determine whether the

14

case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." Black's Law Dictionary (6 Ed.1990) 1433.  See, also, Crim. R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction).  In essence, sufficiency is a test of adequacy.  Whether the evidence is legally sufficient to sustain a verdict is a question of law.  *State v. Robinson* (1955), 162 Ohio St. 486, 55 Ohio Op. at 388, 124 N.E.2d 148.  In addition, a conviction based on legally insufficient evidence constitutes a denial of due process.  *Tibbs v. Florida* (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence.  *Robinson, supra,* 162 Ohio St. at 487, 55 Ohio Op. at 388-389, 124 N.E.2d at 149.  Weight of the evidence concerns "the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.  It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them.  Weight is not a question of mathematics, but depends on its *effect in inducing belief.*"  (Emphasis added.)  Black's, *supra,* at 1594.

When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony.  *Tibbs,* 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661.  See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

*State of Ohio v. Thompkins*, 78 Ohio St. 3d 380, 387-88, 678 N.E.2d 541, 546-47

(1997); *see also* *Tibbs v. Florida*, 457 U.S. 31, 37-38, 38 n.11 (1982); *Jackson v.*

*Virginia*, 443 U.S. 307, 318-19 (1979).  A federal habeas court reviewing a petition for a

writ of habeas corpus, such as this Court, has no authority to re-weigh the credibility of witnesses at trial. *Marshall v. Lonberger*, 459 U.S. 422 (1983).  It cannot, therefore, determine whether a conviction was against the manifest weight of the evidence.

Turning to Reed's sufficiency claim, the due process clause of the Fourteenth Amendment requires that a criminal conviction be based upon proof beyond a reasonable doubt as to every fact necessary to constitute the offense charged. *In re Winship*, 397 U.S. 358, 363-64 (1970).  The test of whether a conviction is supported by sufficient evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.  A habeas court resolves all conflicting inferences in favor of the prosecution, and does *not* weigh the credibility of witnesses. *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir.), *cert. denied*, 464 U.S. 962 (1983).  Furthermore, Consistent with these principles, the Supreme Court has emphasized that habeas courts must review sufficiency of the evidence claims with "double deference:"

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference.  First, on direct appeal, 'it is the responsibility of the jury not the court to decide what conclusions should be drawn from evidence admitted at trial.  A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.' *Cavazos v. Smith*, 565 U.S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (*per curiam*).  And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.  The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U.S. 766, 772, 130 S. Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 132 S.Ct. 2060, 2062, 182 L. Ed. 2d 978 (2012).

In addressing Reed's sufficiency argument, the state appellate court identified the correct standard: "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *Reed*, 2014-Ohio-644 at ¶36.  The state appellate court set forth the elements of the two counts of rape of a victim less than thirteen years of age in violation of O.R.C. .sy 2907.02(A)(1)(b), as well as the elements of gross sexual imposition ("GSI") of a victim less than thirteen years of age in violation of O.R.C. § 2907.05(A)(4).[1] *Id.* at ¶¶35, 42.  The court addressed the merits of Reed's argument as follows:

> [*P38]  On appeal, Reed argues that M.R.'s and J.P.'s testimony was incredible, and thus the trial court erred in denying his motion for acquittal. However, credibility issues pertain to the weight of the evidence, not sufficiency of the evidence.  *See Thompkins*, 78 Ohio St.3d at 388-90. Thus, we will not address this issue until we discuss Reed's second assignment of error regarding manifest weight.
>
> [*P39]  Reed also asserts that J.P. never made an in-court identification of Reed, and thus he should have been acquitted on counts two and three. Generally, there is no requirement that in criminal cases a defendant must be identified in court by a witness.  *State v. Collins*, 8th Dist. Cuyahoga No. 98350, 2013-Ohio-488, ¶19; *In re W.S.*, 11th Dist. Geauga No. 2009-G-2878, 2009-Ohio-5427, ¶41; *State v. Irby*, 7th Dist. Mahoning No. 03 MA 54, 2004-Ohio-5929, ¶14. "'Identity may be established by direct evidence, but direct evidence of identification is not required; circumstantial evidence may be sufficient to establish the identity of [the] accused as the person who committed the crime * * *.'"  *State v. Scott*, 3

---

[1]  The rape statute prohibits "sexual conduct," with a person less than thirteen years old, and sexual conduct, in relevant part, includes both anal intercourse as well as the insertion of any body part, instrument, apparatus, or other object into the anal opening of another.  O.R.C. §§ 2907.01(A) & 2907.02(A)(1).  The GSI statute prohibits "sexual contact," with a person less than thirteen years old, and sexual contact, in relevant part, includes the touching of the thigh, genitals, buttock, or pubic region.  O.R.C. §§ 2907.01(B) & 2907.05(A)(4).

Ohio App.2d 239, 244-45, 210 N.E.2d 289 (7th Dist.1965), quoting 23 C.J.S. Criminal Law § 920, p. 645; *see also State v. Brown*, 10th Dist. Franklin No. 07AP-244, 2007-Ohio-6542, ¶ 19.

[*P40]  M.R. was the first witness to testify for the State and he made a positive in court identification of Reed and also mentioned him by name. J.P. subsequently took the stand and identified Reed by name.  Both M.R. and J.P. testified that Reed lived in Sycamore, Ohio. Viewing the evidence in the light most favorable to the State, we find that there was enough circumstantial evidence presented to prove Reed's identity.

[*P41]  Further, both M.R. and J.P. testified that Reed inserted an instrument into their anal openings.  M.R. and J.P. both testified that they were under the age of 13 when this sexual conduct occurred.  Therefore, we find that at the conclusion of the State's evidence, a rational trier of fact could have found that the State proved the essential elements of rape beyond a reasonable doubt.

* * *

[*P43]  As mentioned above, at the close of the State's evidence, J.P. had testified that he was under the age of 13 when Reed touched his genitals while they were at Scout Village.  J.P. testified that Reed only checked for leeches around his genitals and nowhere else on his body.  Further, J.P. stated that Reed stopped abruptly once other campers arrived at Scout Village.  Therefore, the State provided sufficient evidence that Reed had sexual contact with J.P., a minor under the age of 13, with the purpose to sexually gratify himself.

*Reed*, 2014-Ohio-644 at ¶¶38-41, 43.

The state appellate court identified the correct standard for sufficiency of the evidence claims.  Further, this Court has conducted its own independent review of the relevant portions of the trial transcript and finds the state appellate court's recitation of the evidence adduced at trial is accurate.  (Doc. No. 7-2, Tr. 93-94, 129-132, 139-142.) The testimony of the two victims, viewed in the light most favorable to the prosecution, establishes each and every element of the crimes of which Reed was convicted.  As such, the state appellate court's decision did not involve an unreasonable application of

18

clearly established federal law nor was it an unreasonable determination of the facts in light of the evidence presented.  In his petition, Reed contends that there was no physical or DNA evidence presented at trial, no corroborating witness testimony, and that the victims' testimony was inconsistent and unreliable.  (Doc. No. 1 at pp. 12-13.) These arguments are irrelevant on a sufficiency review.  Under Ohio law, a conviction for rape does not require the presence of physical evidence.  *See, e.g., State v. Johnson*, 858 N.E.2d 1144, 112 Ohio St. 3d 210, 217, 2006-Ohio-6404 (Ohio 2006 ) (rejecting a sufficiency of the evidence claim based on a lack of physical evidence of rape and noting that "[c]orroboration of victim testimony in rape cases is not required"); *accord State v. Ward*, 2010-Ohio-6462 at ¶62, 2010 Ohio App. LEXIS 5363 (Ohio Ct. App., Dec. 28, 2010); *State v. Love*, 550 N.E.2d 951, 49 Ohio App. 3d 88, 91 (Ohio Ct. App. 1988) ("no requirement, statutory or otherwise, that a rape victim's testimony be corroborated as a condition precedent to conviction."); *see also O'Hara v. Brigano*, 499 F.3d 492, 500 (6th Cir. 2007) (finding the testimony of victim that the petitioner raped her, even without corroboration or supporting physical evidence, was sufficient).  Also, as stated above, this Court may not decide issues of credibility.

As such, Reed's first ground for relief is without merit as it was neither contrary to clearly established federal law nor did it involve an unreasonable application of the facts to clearly established law.

**C.    Ground Three: Imposition of Consecutive Sentences**[2]

In his third ground for relief, as this Court understands Petitioner's argument, Petitioner contends the trial court erred by sentencing him to non-minimum and consecutive sentences.  (Doc. No. 1 at pp. 20-22, Doc. No. 10 at pp. 7-8.)  Petitioner asserts that the sentencing court failed to make the required judicial factual findings before imposing consecutive sentences thereby violating O.R.C. § 2929.14(C)(4). Petitioner, without any legal analysis, also claims the Ohio Supreme Court's decision in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470 (Ohio 2006), created an illegal pattern and practice.[3]  (*Id.*)  Reed also cites *Oregon v. Ice*, 555 U.S. 160 (2009), and appears to believe that it mandates judicial fact finding before consecutive sentences may be imposed.[4]  (Doc. No. 1 at p. 21.)

To the extent that Reed's sentencing claims "rest on asserted violations of Ohio sentencing law, such state law claims are not cognizable in federal habeas corpus proceedings, and thus provide no basis for federal habeas corpus relief."  *Huber v. Warden, Lebanon Corr. Inst.*, 2011 WL 2214167 at *9 (S.D. Ohio May 13, 2011), *report*

---

[2]  The Court addressed ground three before ground two, as resolution of this claim is also outcome determinative of portions of Reed's ineffective assistance of appellate counsel claim contained in ground two.

[3]  After the United States Supreme Court's decisions in *Blakely v. Washington*, 542 U.S. 296 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Ohio Supreme Court applied the reasoning of those cases in *Foster*.  The *Foster* decision found that certain sections and provisions of Ohio's sentencing scheme were unconstitutional.  It severed the unconstitutional provisions from the statutory scheme, including former O.R.C. §§ 2929.14(E) and 2929.41(A), which, together, created a presumption in favor of concurrent terms and required a trial court to make certain factual findings prior to imposing consecutive sentences.

[4]  As discussed *infra*, the *Ice* decision found that the imposition of consecutive sentences is not the province of the jury but rather the prerogative of state legislatures and, therefore, no Sixth Amendment concerns are triggered.  555 U.S. at 168-172.

*and recommendation adopted*, 2011 WL 2214935 (S.D. Ohio June 7, 2011) (*citing*

Pulley v. Harris, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984 ) ("A federal court

may not issue the writ on the basis of a perceived error of state law."); *Christian v.*

*Rhode*, 41 F.3d 461, 469 (9th Cir. 1994) ("Absent a showing of fundamental unfairness,

a state court's misapplication of its own sentencing laws does not justify federal habeas

relief.")); *see also Lucey v.* Lavigne, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001 ) ("Wide

discretion is accorded a state trial court's sentencing decision.  Claims arising out of

that decision are not generally cognizable upon federal habeas review, unless the

petitioner can show that the sentence imposed exceeded the statutory limits or is wholly

unauthorized by law."); *see also* Daniels v. Anderson, No. 3:08 CV 697, 2009 WL

5219036, at *6 (N.D. Ohio Dec. 31, 2009) (finding a habeas claim that the state trial

court erred by imposing consecutive sentences was not cognizable absent an attendant

constitutional claim).

Therefore, Reed's argument that the state courts incorrectly applied state law by

failing to require judicial findings is not cognizable.  However, even if such a claim could

be advanced, the underlying premise of Reed's argument – that the state court failed to

make the requisite findings under Ohio law – is inaccurate.  Pursuant to O.R.C. §

2929.14(C)(4):

> (4) If multiple prison terms are imposed on an offender for convictions of
> multiple offenses, the court may require the offender to serve the prison
> terms consecutively if the court finds that the consecutive service is
> *necessary to protect the public from future crime **or** to punish the offender
> **and** that consecutive sentences are not disproportionate to the
> seriousness of the offender's conduct and to the danger the offender
> poses to the public, **and** if the court also finds **any** of the following:*

21

> (a)    The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b)    At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c)    The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

(Emphasis added).

Here, the sentencing court made the following findings regarding consecutive sentences:

> Said sentences shall be served consecutively, one after the other, it being necessary to fulfill the purposes of felony sentencing.  Consecutive terms are necessary to protect the public from future crime and necessary to punish the offender.  Consecutive sentences are not disproportionate to the seriousness of the offender's conduct and the danger the offender poses to the public and its most vulnerable citizens – children.
>
> The harm caused was so great or unusual that no single prison term could adequately reflect the seriousness of the offender's conduct.  One of the Defendant's victims is being bullied at school because of what Defendant did to him and he credits Defendant's actions for "messing up his and his family's whole life."  Defendant's other victim has had thoughts of suicide, acts inappropriately, has trust and anger issues and is seeing a counselor.

(Doc. No. 7-1, Exh. 7.)

The sentencing court's findings in the first paragraph clearly set forth the findings required by O.R.C. § 2929.14(C)(4), while the second paragraph's findings plainly address the additional requirement of § 2929.14(C)(4)(b).  Therefore, Petitioner has

22

failed to establish that an error of state sentencing laws ever occurred.

Finally, the Sixth Circuit has held that the resentencing under *Foster* to non-minimum and consecutive sentences violated neither the *Ex Post Facto* or Due Process Clause, as those sentences were always potentially available.  *Semala v. Duffey*, 2010 U.S. App. LEXIS 24564 (6th Cir. Ohio Jun. 9, 2010); *accord Wynn v. Morgan*, 2012 WL 2393719 at *1 (N.D. Ohio Jun. 25, 2012) (Polster, J.) (agreeing with report and recommendation that the argument – that consecutive, non-minimum sentences without proper fact-finding unconstitutionally violates the *ex post facto* clause – had been rejected by the Sixth Circuit).  Reed's reliance on *Ice* is also misplaced as that decision is inapposite.  In *Ice*, the Supreme Court determined that the imposition of consecutive sentences based on judicial fact-finding rather than facts determined by a jury, does not violate the right to trial by jury.  Essentially, no Sixth Amendment concerns are triggered by the imposition of consecutive sentences.  555 U.S. at 168-172.

Moreover, the Ohio statute under which Reed was sentenced, Ohio Rev. Code § 2929.14(C)(4), was drafted in response to, and in compliance with the Supreme Court's decision in *Ice*.  After *Ice* was decided, the Ohio Supreme Court rejected a defendant's claim that *Ice* "reinstated or revived" the severed provisions.  *State v. Hodge*, 941 N.E.2d 768, 2010-Ohio-6320, 128 Ohio St.3d 1, 2 (Ohio 2010).  The court concluded that "[b]ecause the statutory provisions are not revived, trial court judges are not obligated to engage in judicial fact-finding prior to imposing consecutive sentences unless the General Assembly enacts new legislation requiring that findings be made."

23

*Id*. at 10-11.  The General Assembly did just that.  It amended former § 2929.14(E) in September 2011, enacting new language in § 2929.14(C)(4) requiring judicial fact-finding for consecutive sentences.  *See, e.g., State v. Calliens*, No. 97034, 2012 WL 589527, at *5 (Ohio App. Ct. Feb. 23, 2012).  The trial court applied the new § 2929.14(C)(4) to Reed's sentencing in September 2013.

As Reed has failed to identify a violation of any clearly established federal law stemming from the imposition of consecutive sentences, his third ground for relief is without merit.

**D.     Ground Two: Ineffective Assistance of Trial and Appellate Counsel**

In assessing claims of ineffective assistance of counsel, courts apply the familiar standard of *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a petitioner to demonstrate both that his counsel's performance was deficient, and that the allegedly ineffective assistance caused him prejudice*:*

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687.  This standard applies "regardless of whether a [p]etitioner is claiming ineffective assistance of trial counsel or ineffective assistance of appellate

24

counsel." *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005).  To establish the prejudice component of the *Strickland* standard, a defendant must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Lundgren v. Mitchell*, 440 F.3d 754, 799 (6th Cir. 2006) (citations omitted).

Where, as here, a state appellate court correctly identifies *Strickland* as the standard for assessing a petitioner's ineffective assistance claim, in order for the petitioner to receive habeas relief, the state court's ruling must be an *unreasonable* application of the *Strickland* standard.  *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) ("The question is not whether a federal court believes the state court's determination under *Strickland* was incorrect but whether that determination was unreasonable – a substantially higher threshold.") (internal quotation marks omitted). Because the performance and prejudice components of the *Strickland* test are mixed questions of law and fact, they are subject to *de novo* review by a habeas court.  *Carter v. Bell*, 218 F.3d 581, 591 (6th Cir. 2000).  Federal habeas courts, however, must also employ "a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt."  *Burt v. Titlow*, ____ U.S. ____, 134 S. Ct. 10, 13 (2013); *see also Cullen v. Pinholster*, 563 U.S. 170, 131 S. Ct. 1388 (2011) ("Our review of the [state court's] decision is thus doubly deferential.  We take a highly deferential look at counsel's performance through the deferential lens of § 2254(d).") (internal citations and quotation marks omitted).

25

### 1.  Ineffective Assistance of Trial Counsel

In his second ground for relief, Petitioner asserts that trial counsel rendered ineffective assistance by failing to object to several instances of what he believes to be prosecutorial misconduct.  (Doc. No. 1 at pp. 17-19.)

Specifically, Petitioner avers that the prosecutor improperly vouched for the credibility of the victims' testimony when he opined their testimony had "the ring of truth" to it, and also improperly asked Reed whether he had a "rule" against being left alone with his grandchildren due to an attractions to young boys.  (*Id*.)  With respect to the latter, Reed, on direct examination by defense counsel, indicated that at the time of the alleged offense against his grandson, he was never alone in the house with him as "[t]here was always somebody around...."  (Doc. No. 7-2, Tr. 162.)  On cross-examination, the following exchange occurred:

> Q:  Okay, and you really kind of went out of your way to indicate that you were never left alone with [the victim]; is that right?
>
> A:  That's right.  I don't remember ever being in the house alone with him or anything.
>
>                                     * * *
>
> Q:  Are you saying you would never, ever allow yourself to be alone with one of the children?  Is that what you're saying?
>
> A:  Right.
>
> Q:  Okay.  And was that [a] rule because you have an attraction to young children?
>
> A:  No.
>
> Q:  So is it your testimony here today that you have absolutely no attraction to young men?

26

A:     No.

Q:     And you would never view young men in a state of nudity?

A:     What's that?

Q:     Are you saying you would never view young men in a state of nudity?

A:     Yes, I have.

Q:     Yes, you have.

A:     On the internet.

Q:     On the internet. Okay.  And what young -- when did this occur?

A:     Late 2006, 2007.

Q:     So you're testifying here today that you have, and you do have an attraction for young men then, if you're watching young men in the state of nudity on the internet?

A:     I don't have an attraction for them.

(Doc. No. 7-2, Tr. 181-183.)[5]

Here, the state appellate court correctly identified the *Strickland* standard as governing ineffective assistance of trial counsel claims and concluded that the challenged actions were strategic trial tactics that neither violated *Strickland* nor created the reasonable probability of a different outcome:

---

[5]  Reed denied watching child pornography and insisted that it was "adult" because "[i]t was always teenagers, or eighteen and older."  (Tr. 184.)  He testified he was always clothed when viewing the images, and stopped viewing it in late 2006 to early 2007.  (Tr. 194.)  A rebuttal witness, Tina Reed (a daughter-in-law of the Petitioner), testified that in 2009, she repeatedly witnessed Reed viewing images of naked boys under the age of fifteen on his computer while Reed too was naked.  (Tr. 199-201.)  Trial counsel objected to Tina's testimony, which the trial court overruled as it went to Petitioner's credibility.  (Tr. 198-199.)

[*P59]  On appeal, Reed argues that his trial counsel failed to object to prejudicial and improper comments the prosecutor made during voir dire, opening statements, cross-examination, and in closing statements. Upon our review of the record, the actions of Reed's trial counsel appear to have been tactical or strategic trial decisions.  As such, the actions or inactions of Reed's trial counsel do not fall below an objective standard of reasonable representation.  Further, the inactions of Reed's trial counsel did not create any reasonable probability of a different outcome.

[*P60]  Reed also argues that the prosecutor made an improper statement in his closing argument when he stated that "[k]ids just don't make that sort of stuff up * * * it had a ring of truth to it[]" and that his trial counsel was ineffective for failing to object to the alleged misconduct.  Trial Tr., p. 222.  Generally, the State is granted "wide latitude" in its closing statements.  *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990).  However, a prosecutor may not vouch for the truthfulness of a witness.  *State v. Masing*, 6th Dist. Ottawa No. OT-01-022, * 3, 2002-Ohio-1873.  This is because "expressions of personal opinion by the prosecutor are 'a form of unsworn, unchecked testimony and tend to exploit the influence of the prosecutor's office and undermine the objective detachment that should separate a lawyer from the cause being argued.'"  *State v. Baldev*, 12th Dist. Butler No. CA2004-05-106, 2005-Ohio-2369, ¶ 21, quoting *State v. Rahman*, 23 Ohio St.3d 146, fn 8, 23 Ohio B. 315, 492 N.E.2d 401 (1986).  However, "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips*, 455 U.S. 209, 219, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982).

[*P61]  Reed does not raise in a separate assignment of error that the State engaged in prosecutorial misconduct, only that his trial counsel was ineffective for failing to object to this one incident of alleged misconduct. When a trial counsel fails to object to a prosecutor's repeated "pejorative ranting at his client's expense" courts have found that his performance fell below an objective standard of reasonable representation.  *State v. Carpenter*, 116 Ohio App.3d 615, 626, 688 N.E.2d 1090, (2d Dist.1996).  In *Carpenter* the prosecutor "went beyond merely arguing reasonable inferences from the facts, and asserted as fact that the defendant was a liar and that the state's witnesses were honest."  *Id*. at 624.  The prosecutor  made repeated improper comments throughout the trial, without a single objection from the defense counsel.  *Id*.  We find the present matter distinguishable, as the prosecutor's comment was an isolated incident and had almost no effect on the fairness of Reed's trial. Therefore, the decision of Reed's trial counsel not to object during the State's closing statement was a tactical decision and was reasonable

28

under *Strickland* standards.

*Reed*, 2014-Ohio-644 at ¶¶59-61 (footnotes omitted).

While the state appellate court did not individually address trial counsel's failure to object to the above quoted cross-examination concerning Petitioner's "rule" against being left alone with his own grandchildren, the Court sees nothing improper in the prosecutor's cross-examination and, therefore, no basis for objection.  Even assuming *arguendo* that counsel could have successfully objected, the Court finds nothing unreasonable in the state appellate court's determination that it was within the realm of trial strategy whether to object.

Turning to the prosecutor's statements during closing arguments, the state appellate court found that the prosecutor's comment was an "isolated incident" that had a negligible impact on the fairness of the trial.  Given this finding, the Court finds nothing unreasonable about the corresponding determination that trial counsel's failure to object would not have resulted in a reasonable probability of a different outcome.

### 2. Ineffective Assistance of Appellate Counsel

Petitioner also asserts that appellate counsel was ineffective for filing a brief that contained only 4.5 pages of argument, and contends counsel "should have argued more ... " (Doc. No. 1 at p. 19.)  Specifically, Reed asserts appellate counsel should have raised a claim of prosecutorial misconduct, should have raised "the Plain Errors," and should have challenged the sentences.  (*Id*.)

As stated above, the *Strickland* standard governing ineffective assistance of counsel claims applies to ineffective assistance of appellate counsel claims as well.

29

However, an appellant has no constitutional right to have every non-frivolous issue raised on appeal.  *See, e.g., Jones v. Barnes*, 463 U.S. 745, 750-52 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.")  Tactical choices concerning which issues to raise on appeal are "properly left to the sound professional judgment of counsel..." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003) (internal quotation marks and citations omitted).

The state appellate court did not address these claims directly, as Reed never raised them in a Rule 26(B) application to reopen his appeal.  Nevertheless, Reed's claim is without merit.  Appellate counsel was not required to raise every conceivable issue, and certainly not arguments that he had no real probability of winning.  With respect to Petitioner's argument that counsel should have assigned as error the prosecutor's alleged misconduct, this argument was addressed indirectly.  The state appellate court observed, in a footnote, that the prosecutor's statement in closing argument that the victims' testimony had "a ring of truth to it"  "came close to witness vouching," but declined to address whether the State engaged in prosecutorial misconduct as it was not raised as a separate assignment of error. *Reed*, 2014-Ohio-644 at n. 2.

Nevertheless, "[t]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the

30

prosecutor." *Smith v. Phillips,* 455 U.S. 209, 219 (1982).  The aim of due process "is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused." *Id.* (citations omitted).  To obtain habeas relief a petitioner must show that prosecutorial misconduct was sufficiently egregious that it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637 (1974)); *see also United States v. Young,* 470 U.S. 1, 11-12 (1985) (holding that habeas relief may by granted only if the prosecutor's conduct was so egregious as to render the petitioner's trial fundamentally unfair).  This determination must be made by considering the totality of the circumstances of each case.  *See Byrd v. Collins,* 209 F.3d 486, 529-30 (6th Cir. 2000).  Prosecutorial misconduct claims are subject to harmless error analysis.  *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir. 1997).  In a case of alleged prosecutorial misconduct, courts consider: (1) the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; (2) whether they are isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and, (4) the strength of the competent proof to establish the guilt of the accused.  *Id.* at 964.  On federal habeas review, a petitioner must show that a trial error "had substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993).

Here the state appellate court found that the prosecution's statement, while coming close to improper vouching, was an isolated incident that had virtually no impact

31

on the fairness of the trial.  Given this determination, Reed is unable to demonstrate the requisite prejudice, as he would be unable to show that inclusion of a prosecutorial misconduct claim would have resulted in a reasonable probability of a different outcome on appeal.  Furthermore, even assuming the prosecution engaged in improper vouching, in *Byrd v. Collins*, 209 F.3d 486, 537 (6ᵗʰ Cir. 2000), the Sixth Circuit Court of Appeals observed that it had "not discovered, nor have the parties directed us, to any cases in which we have granted habeas relief on the basis of improper vouching."  The *Byrd* decision noted that the few cases in which prosecutorial vouching provided a basis for habeas relief were limited to the context of direct appeals in federal prosecutions, and even in those cases reversal was not automatic.  *Id*.; *see also Smith v. Jones,* 326 Fed. App'x 324, 328 (6ᵗʰ Cir. 2009) ("Prosecutorial vouching rarely warrants a new trial.");  *Mungar v. Burt*, 2016 WL 278808 at *8 (E.D. Mich. Jan. 22, 2016) ("It is worth noting that the Sixth Circuit has never granted habeas relief for improper vouching."); *but see Bates v. Bell*, 402 F.3d 635, 646 (6ᵗʰ Cir. 2005) (finding repeated improper injections of prosecutor's personal beliefs, among other instances of misconduct, was grounds for habeas relief).  As such, even if this Court were faced with a free-standing prosecutorial misconduct claim, which it is not, it is questionable whether the prosecutor's alleged vouching, standing alone, would be sufficient to warrant habeas relief.

Reed also contends that appellate counsel should have raised "plain errors."  He does not explain what those plain errors were.  Because Reed is *pro se*, this Court must liberally construe his habeas petition.  *Franklin v. Rose*, 765 F.2d 82, 85 (6ᵗʰ Cir. 1985)

("The allegations of a *pro se* habeas petition, though vague and conclusory, are entitled to liberal construction. The appropriate liberal construction requires active interpretation in some cases to construe a *pro se* petition to encompass any allegation stating federal relief.") "Active interpretation, however, does not involve the Court assuming the role of counsel, not even for a *pro se* habeas petitioner." *Campbell v. Bunting*, 2015 WL 4984871 at *9 (N.D. Ohio Aug. 19, 2015). As the Court cannot discern Reed's intended argument, it is deemed waived.

Finally, Petitioner has alleged that appellate counsel was ineffective for failing to raise a challenge to his sentence. As discussed in the preceding section, Reed's challenges to his sentence are wholly without merit. As such, appellate counsel could not have been ineffective for failing to raise arguments upon which he had no real probability of prevailing.

Petitioner's second ground for relief, therefore, is without merit.

### VII. Conclusion.

For all the reasons set forth above, the petition should be DENIED.


Date: June 21, 2016                              */s/ Nancy A. Vecchiarelli*
                                                 United States Magistrate Judge


### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** ***See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).** ***See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**